UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

:2020 OCT 30  PM 3: 12

CLERK

BY _____
DEPUTY CLERK

SALLY H.,                                )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )        Case No. 2:18-cv-00224
                                         )
COMMISSIONER OF SOCIAL SECURITY,         )
                                         )
        Defendant.                       )

**OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE**
**DECISION OF THE COMMISSIONER, DENYING THE COMMISSIONER'S**
**MOTION FOR AN ORDER AFFIRMING THE DECISION,**
**AND REMANDING FOR FURTHER PROCEEDINGS**
(Docs. 6 & 7)

Plaintiff Sally Hart is a claimant for Social Security Disability Insurance Benefits
("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. She
brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social
Security Commissioner (the "Commissioner") that she is not disabled. (Doc. 6.) The
Commissioner moves to affirm. (Doc. 7.)

After Plaintiff's application was initially denied by the Social Security
Administration ("SSA"), Administrative Law Judge ("ALJ") Edward Malvey concluded
that Plaintiff had the capacity to perform medium work with certain exertional and non-
exertional limitations and could perform her past relevant work ("PRW") as a custodian.
As a result, the ALJ found her ineligible for benefits. Plaintiff asserts that the "sole issue
with respect to whether [she] is disabled is whether she can perform no more than light
work, or whether she is capable of medium work. If she can perform no more than light
work, she is disabled. If she can perform medium work, she is not." (Doc. 6 at 4.)
Medium work involves lifting up to fifty pounds occasionally with frequent lifting or
carrying of objects weighing up to twenty-five pounds. 20 C.F.R. §§ 404.1567(c) and

416.967(c); *see* Social Security Ruling ("SSR") 83-10 (stating medium work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday).

Plaintiff is represented by Craig A. Jarvis, Esq. Special Assistant United States Attorney Kristina D. Cohn represents the Commissioner.

## I.    Procedural History.

On September 23, 2016, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of May 1, 2013, due to back pain, problems with her legs, hearing loss in her right ear, a learning disability, depression, anxiety, a hoarding disorder, and left knee arthritis. Her date last insured is December 31, 2018.

The SSA denied her applications on December 5, 2016, and on reconsideration on April 7, 2017. Plaintiff filed a timely request for a hearing on June 6, 2017. On December 6, 2017, a videoconference hearing was held before the ALJ at which Plaintiff and Vocational Expert ("VE") Elizabeth C. LaFlamme testified. On December 29, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled. Plaintiff filed a timely appeal with the SSA's Office of Disability Adjudication and Review Appeals Council (the "Appeals Council"), which denied her request for review on October 15, 2018. The ALJ's decision thus stands as the Commissioner's final determination.

## II.   The ALJ's Application of the Five-Step, Sequential Framework.

In order to receive DIB and SSI benefits, a claimant must be disabled on or before his or her date last insured.[1] SSA regulations set forth the following five-step, sequential framework to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

impairments; (3) whether the impairment meets or equals the severity of the
specified impairments in the Listing of Impairments; (4) based on a
"residual functional capacity" assessment, whether the claimant can
perform any of his or her past relevant work despite the impairment; and
(5) whether there are significant numbers of jobs in the national economy
that the claimant can perform given the claimant's residual functional
capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R.
§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability
within the meaning of the Act, and bears the burden of proving his or her case at [S]teps
[O]ne through [F]our of the sequential five-step framework established in the SSA
regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation
marks and citations omitted). At Step Five, "the burden shift[s] to the Commissioner to
show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150
(alterations in original) (internal quotation marks omitted).

In this case, the ALJ concluded at Step One that Plaintiff had not engaged in any
substantial gainful activity since May 1, 2013, her alleged onset date. At Step Two, he
concluded that Plaintiff had the severe impairments of mild degenerative joint disease of
the lumbar spine, mild scoliosis of the lumbar spine, and an adjustment disorder.

At Step Three, the ALJ evaluated Plaintiff's impairments and concluded that no
impairment or combination of impairments met or medically equaled the severity of a
listed impairment. Based on a November 2016 consultative exam, the ALJ concluded that
Plaintiff had "no apparent limitation with ambulation[,]" but made no findings regarding
Plaintiff's lifting ability other than to adopt a conclusion of a non-examining physician.
(AR 15.) With regard to Plaintiff's mental limitations, the ALJ concluded that she had a
mild limitation with respect to understanding, remembering, or applying information; a
mild restriction on her ability to interact with others; and a moderate limitation with
regard to maintaining concentration, persistence, and pace based on the presence of
"some gaps in her fund of information that suggested limited intellectual ability." *Id.* The
ALJ noted that a brief cognitive status exam ("BCSE") "showed borderline impaired

3

performance, mainly due to difficulties (slowed performance) on an inhibition task" and
that Plaintiff experienced a mild limitation in adapting and managing herself. (AR 16.)

The ALJ determined that Plaintiff had the following Residual Functional Capacity
("RFC") at Step Four:

> [Plaintiff] has the residual functional capacity to perform medium work as
> defined in 20 CFR 404.1567(c) and 416.967(c) except she can tolerate
> moderate noise, can maintain concentration, persistence and pace for 1-3
> step tasks for 2[-]hour[] intervals during an 8[-]hour day, but cannot
> tolerate a production rate pace. Further, she is limited to simple
> work[-]related decisions.

(AR 17.)

At Step Five, the ALJ determined that Plaintiff is capable of performing her PRW
as a custodian. On this basis, the ALJ concluded that Plaintiff was not disabled.

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

In reviewing the Commissioner's decision, the court "'conduct[s] a plenary review
of the administrative record to determine if there is substantial evidence, considering the
record as a whole, to support the Commissioner's decision and if the correct legal
standards have been applied.'" *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013)
(quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). "Substantial evidence is
'more than a mere scintilla. It means such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir.
2013) (internal brackets and quotation marks omitted) (quoting *Richardson v. Perales*,
402 U.S. 389, 401 (1971)).

Even if the court could draw different conclusions after an independent review of
the record, the court must uphold the Commissioner's decision when it is supported by
substantial evidence and when the proper legal principles have been applied. *See* 42
U.S.C. § 405(g). The Commissioner, not the reviewing court, resolves evidentiary
conflicts and determines credibility issues, and the court may not substitute its own
judgment for that of the Commissioner. *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d

Cir. 2002); *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591
(2d Cir. 1984).

## B.  Whether the ALJ's Finding that Plaintiff Can Perform Medium Work is Supported by Substantial Evidence.

Plaintiff contends the ALJ committed reversible error by concluding she is able to
perform medium exertional work and focuses, in particular, on the lifting requirements of
her past employment as a custodian which she acknowledged she performed at a
"somewhat greater than medium[]" level. (Doc. 6 at 5.) She points to three sources of
information in support of her claim that she can no longer perform the lifting
requirements for that exertional level: her own testimony; an October 25, 2017 functional
capacity evaluation ("FCE"); and the opinion of her treating physician, Melissa
Volansky, M.D. Plaintiff further argues that the ALJ erroneously accorded substantial
weight to the opinion of state non-examining medical consultant Donald Swartz, M.D.,
who "found a range of medium exertion work" (AR 18) but did not opine that she could
perform her custodian job at the medium exertional level. *See* AR 141 ("A finding about
the capacity for PRW has not been made."); AR 157 ("We do not have sufficient
vocational information to determine whether you can perform any of your past relevant
work.").

An RFC determination represents "the most [a claimant] can still do despite [her]
limitations" and is determined based on "all the relevant evidence" in the record,
including evidence of both severe and non-severe medically determinable impairments.
20 C.F.R. § 404.1545(a)(1)-(2). In evaluating a plaintiff's ability to work, "[a]n ALJ is
tasked with weighing all of the evidence available to make an RFC finding that is
consistent with the record as a whole." *Lawton v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d
378, 382 (W.D.N.Y. 2019) (internal quotation marks, brackets, and citation omitted).
"[A]n ALJ is free . . . to choose between properly submitted medical opinions" in
rendering his or her analysis, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal
alterations, quotation marks, and citation omitted), and need not "reconcile every
conflicting shred of medical testimony" as long as the ALJ "acknowledge[s] relevant

evidence or explain[s] his implicit rejection of it." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90
(W.D.N.Y. 2000) (citations omitted). The opinion of a non-examining source may
override opinions of treating sources, provided it is supported by evidence in the record.
*Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . permit the
opinions of nonexamining sources to override treating sources' opinions provided they
are supported by evidence in the record").

SSA regulations define "medical opinions" as "statements from acceptable
medical sources that reflect judgments about the nature and severity" of the claimant's
impairments, including "symptoms, diagnosis and prognosis," what the claimant "can
still do despite impairment(s)," and the claimant's "physical or mental restrictions." 20
C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Under the treating physician rule, an ALJ
considering the opinion of a claimant's treating source first must decide "whether the
opinion is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir.
2019). A treating physician's opinion is entitled to "controlling weight" if it is "well-
supported by medically acceptable clinical and laboratory diagnostic techniques and is
not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R.
§ 404.1527(c)(2).

> [I]f the ALJ decides the opinion is not entitled to controlling weight, it must
> determine how much weight, if any, to give it. In doing so, it must
> explicitly consider the following, nonexclusive *Burgess* factors: (1) the
> frequen[cy], length, nature, and extent of treatment; (2) the amount of
> medical evidence supporting the opinion; (3) the consistency of the opinion
> with the remaining medical evidence; and (4) whether the physician is a
> specialist.

*Estrella*, 925 F.3d at 95-96 (internal quotation marks omitted) (second alteration in
original). "At both steps, the ALJ must give good reasons . . . for the weight [it gives the]
treating source's [medical] opinion." *Id.* at 96 (alterations in original) (internal quotation
marks omitted). However, "slavish recitation of each and every factor" is not required so
long as "the ALJ's reasoning and adherence to the regulation are clear[.]" *Rivera v.
Comm'r of Soc. Sec.*, 394 F. Supp. 3d 486, 494 (S.D.N.Y. 2019) (internal brackets
omitted) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). "An ALJ's

failure to explicitly apply the *Burgess* factors when assigning weight" to a treating physician's opinion "is a procedural error" that is harmless only if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed[.]" *Estrella*, 925 F.3d at 96 (citations and internal quotation marks omitted).

"Other source" opinions, as opposed to the opinions of "acceptable medical sources[,]" SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006) (internal quotation marks omitted),[2] are evaluated using the same factors as other non-treating source medical opinions because they "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1). Those factors include: (1) "[h]ow long the source has known and how frequently the source has seen the individual;" (2) "[h]ow consistent the opinion is with other evidence;" (3) "[t]he degree to which the source presents relevant evidence to support an opinion;" (4) "[h]ow well the source explains the opinion;" (5) "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s);" and (6) "[a]ny other factors that tend to support or refute the opinion." SSR 06-03P, 2006 WL 2329939, at *4-5; *see also* 20 C.F.R. § 404.1527(c).

"[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,'" particularly if "he or she has seen the individual more often" and "has provided better supporting evidence and a better explanation for his or her opinion." SSR 06-03P, 2006 WL 2329939, at *5; *accord* 20 C.F.R. § 404.1527(f)(1).

---

[2] SSR 06-03P was rescinded effective March 27, 2017. *See* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-03p, Fed. Reg. 82, 15,263 (Mar. 27, 2017). Because Plaintiff filed her applications prior to March 27, 2017, SSR 06-03P applies to her claim. *See id.* ("This rescission will be effective for claims filed on or after March 27, 2017."); *Harrison v. Comm'r of Soc. Sec.*, 2018 WL 3153399, at *3 n.4 (W.D.N.Y. June 28, 2018) ("SSR 06-03p has been rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, but remains in effect for claims filed before March 27, 2017.").

The treating physician rule does not require the ALJ to defer to a treating physician's opinion on an issue reserved for the Commissioner's judgment, "including the ultimate finding of whether a claimant is disabled and cannot work[.]" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). However, the Commissioner's prerogative to determine disability "does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited." *Snell*, 177 F.3d at 134 (remanding to Appeals Council "for a statement of the reasons on the basis of which [plaintiff's treating physician's] finding of disability was rejected").

In this case, Plaintiff was fifty-eight years old on her alleged disability onset date and was sixty-four years old as of her date last insured. She completed high school and previously worked as a custodian. Although Plaintiff claims the ALJ mischaracterized the reasons for her termination of her employment, suggesting it was voluntary, the ALJ's reference that Plaintiff "stopped working because she was struggling to do her job due to problems with her back[]" (AR 18) is consistent with her explanation that she could not keep up with the job to her employer's satisfaction (AR 246) because her "back hurt[] a lot[]" (AR 247) and she needed to rest because of her back problems and shortness of breath (AR 79). Because Plaintiff challenges only her exertional limitations on appeal and her ability to perform her PRW, the court focuses its attention on the medical evidence pertaining to those issues.

In September 2013, Plaintiff attended physical therapy for left knee pain. At that time, she had normal bilateral knee range of motion and intact reflexes. Approximately two weeks later, she reported a decrease in left knee pain, and on October 4, 2013, Plaintiff stated her pain had decreased and she was walking two to three miles per day. Shortly thereafter, she discontinued physical therapy.

In November 2014, Fred Rossman, M.D., conducted a physical examination of Plaintiff who reported pain in both of her knees for ten years which improved with physical therapy but remained at a four on a scale of one to ten. She informed Dr.

8

Rossman that she had been fired from her housecleaning job because "[i]t was hard to keep up[]" and she was "struggling . . . everything was changing . . . with knee pain." (AR 335) (internal quotation marks omitted) (omissions in original). She stated she was unable to work at that time due to her knee pain and also reported right shoulder pain that varied in intensity depending on the weather, although she acknowledged she was able to walk one to two miles at a time and she had not pursued medical treatment for her right shoulder pain. She stated that she had difficulty seeing objects in the distance because of cataracts, although she was able to read. She reported being deaf in her left ear.

During the exam, Dr. Rossman observed that Plaintiff had a normal gait and did not appear to be in acute distress. She was able to climb up and down ten steps to enter the examination office and was able to sit for thirty minutes without needing to stand or move from her chair. She was able to independently dress and undress herself and demonstrated no discomfort during the examination. Plaintiff did not report any back tenderness and she had normal neck and back range of motion; had normal range of motion of her left shoulder; reduced range of motion of her right shoulder on flexion; had full range of motion in both knees; and had a slightly reduced bilateral hip range of motion. Dr. Rossman did not observe scoliosis. Plaintiff demonstrated full bilateral grip strength, had intact reflexes and full strength throughout her extremities, and a negative straight leg raise test bilaterally.

In December 2014, consultative examiner Gregory Korgeski, Ph.D., evaluated Plaintiff for mental impairments and noted that she was cooperative, related adequately, and was attentive and friendly. In the course of the examination, Plaintiff stated that she stopped working as a hotel housekeeper because of knee pain related to climbing while cleaning and that she had initially looked for other work but had no transportation. On examination, Dr. Korgeski did not observe Plaintiff to be in pain and noted that she had an intact gait. She scored 44 out of 58 on a BCSE, which was at the low end of borderline intellectual functioning, consistent with functioning within the fifth to ninth percentile. Plaintiff demonstrated adequate orientation, time estimation, clock drawing, incidental recall, and verbal production abilities but had difficulties with verbal inhibition tasks and

mental control tasks. She had logical and organized thoughts with no tangentiality, mild circumstantiality, and no loose associations. Her mini-mental status examination score was within normal range. Plaintiff reported living with her boyfriend, playing games on a tablet, cooking occasionally, completing chores, driving, shopping, managing her finances, socializing with friends, crocheting, and using a computer. She denied any neurologic or musculoskeletal complaints and indicated a preference for a job that did not involve kneeling. Dr. Korgeski diagnosed an adjustment disorder with depression and anxious mood and a possible neurocognitive disorder.

From September 2015 through March 2016, Plaintiff treated with nurse practitioner ("NP") Boseung Halliwell for medication management and individual psychotherapy. In the course of this treatment, Plaintiff advised that she was looking for part-time work but was "giv[ing] up" because "no one [was] hiring [her]." (AR 382) (internal quotation marks omitted).

In an initial interview with Vocational Rehabilitation Counselor April Goodrich on October 5, 2015, Plaintiff reported an ability to "lift up to 20 pounds with 10 pounds the maximum for repetitive lifting." (AR 395.) On a Vermont Certification of Eligibility/Ineligibility form, Ms. Goodrich checked that Plaintiff's "[m]aximum repetitive lift[ing] capacity" was twenty pounds. (AR 397.)

In May 2016, Plaintiff was evaluated for the recent onset of left shoulder pain. From May 2016 through June 2017, Dr. Volansky treated Plaintiff for, among other things, left shoulder pain and back pain. Plaintiff had full strength throughout her extremities and was neurologically intact. Dr. Volansky noted that Plaintiff had normal curvature of her spine, no spinal tenderness, and normal bilateral lower extremities. Plaintiff demonstrated a full range of motion of her left shoulder and had a negative impingement sign, negative drop arm test, negative cross arm test, and nontender left shoulder joints.

On September 8, 2016, Ann Brin, a vocational rehabilitation counselor, administered a K – BIT II IQ test on which Plaintiff scored sixty-seven for verbal, ninety-four for nonverbal, and eighty for composite. Plaintiff told Ms. Brin that she was in

special education classes in school. Ms. Brin opined that the difference between
Plaintiff's verbal and nonverbal scores was indicative of a learning disability. She further
observed on November 4, 2016 that Plaintiff "is unable to do any heavy lifting[.]" (AR
401.) Also that month, Plaintiff noted on a Social Security form that she lost her job
because she was "slow" and "not as detailed as they wanted [her] to be[,]" (AR 246)
(internal quotation marks omitted), and that "[her] back hurts a lot." (AR 247.) By letter
dated November 4, 2016 on behalf of the State of Vermont VocRehab Vermont, Ms. Brin
wrote in support of Plaintiff's application for disability benefits and opined that Plaintiff
"is unable to do any heavy lifting," and thus after "work[ing] with [Plaintiff for] over a
number of months and [trying] to work on [a] job search with her," Ms. Brin had "not
been able to find employment for her." (AR 401.)

In November 2016, consultative examiner Dennis Reichardt, Ph.D., administered a
brief mental status exam on which Plaintiff scored twenty-seven out of thirty and
received an IQ score of seventy on a Quick Test, although Dr. Reichardt opined that her
nonverbal score could be higher. He diagnosed her with anxiety and depression, which he
opined were long-term problems, and assessed that her cognitive mental abilities were in
the borderline range. He further opined that Plaintiff's academic skills were weak,
particularly in math. Dr. Reichardt noted that, considering her work history, her
nonverbal abilities were likely stronger but not very strong and she would have to be
employed in low skill labor.

During a November 21, 2016 reevaluation, Dr. Rossman conducted a consultative
exam of Plaintiff during which she complained of left knee and back pain. On
examination, Plaintiff had an intact gait and was able to climb up and down ten steps to
enter the office. She had normal neck and back range of motion as well as normal range
of motion of her left shoulder but a reduced range of motion of her right shoulder on
flexion. She had full bilateral grip strength, full range of motion of both knees, and
slightly reduced bilateral hip range of motion. Her reflexes were intact, and she had full
strength throughout her extremities. Plaintiff had a negative straight leg raising test
bilaterally.

11

On November 30, 2016, state agency psychological consultant Roy Shapiro, Ph.D., opined that Plaintiff had a moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Dr. Shapiro recommended that Plaintiff be restricted from high productivity demand settings such as an assembly line but concluded that she retained the adaptive skills to deal with routine changes and safety concerns.

Also that month, Geoffrey Knisely, M.D., a consultative expert for Disability Determination Services, opined that Plaintiff was limited to one-to-three-step tasks and could not perform activities that demanded high productivity such as assembly-line work but she could adapt to routine changes and safety concerns. State agency psychological consultant Thomas Reilly, Ph.D. reiterated the same restrictions in April 2017.

In an April 7, 2017 disability determination explanation upon reconsideration of Plaintiff's DIB claim, Dr. Swartz opined based on his review of the records that Plaintiff had the medically determinable impairment of a "[s]pine [d]isorder[]" which was a "[s]econdary" priority and "[s]evere[.]" (AR 135.) Without providing a citation to any records, he further determined that she could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; was able to stand or walk for six hours out of eight; was able to sit for six hours out of eight; had unlimited pushing/pulling ability; and had no postural limitations. In doing so, he observed that "[t]here is no indication that there is a medical opinion from any medical source." (AR 137.) However, he ordered x-rays on April 5, 2017, the results of which were as follows: "Three views were obtained. The intervertebral disc spaces appear fairly well maintained. There is a mild right convex lumbar scoliosis. Mild hypertrophic degenerative changes of the facet joints and end plates is noted particularly in the lower lumbar region. CONCLUSION: Mild DJD of the lumbar spine." (AR 414.)

Dr. Swartz did not opine that Plaintiff had the capacity to perform her PRW. He did, however, conclude that Plaintiff could perform other work. *See* AR 140 ("A finding about the capacity for PRW has not been made. However, this information is not material

because all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education, and RFC. Therefore, the individual can adjust to other work").

On April 5, 2017, Dr. Reilly reviewed the evidence of record and opined that Plaintiff had a mild limitation in her ability to interact with others; a mild limitation in her ability to understand, remember, or apply information; moderate difficulties in maintaining concentration, persistence, or pace; and mild limitations in adapting or managing herself. Dr. Reilly further opined that Plaintiff retained the concentration, persistence, and pace for one-to-three-step tasks for two hours in an eight-hour day and forty-hour week.

Dr. Volansky was sent a copy of Plaintiff's April 2017 x-rays. In May 2017, she evaluated Plaintiff for back pain, which Plaintiff reported had been present for some time and was most noticeable during "repetitive motions like vacuuming," and "[a]ggravated by[] housework[.]" (AR 457.) Dr. Volansky diagnosed degenerative facet arthritis in the lumbar spine and noted that Plaintiff had performed manual labor for many years and had developed degenerative joint and spine disease which impaired her ability to work. Plaintiff reported being terminated from employment due to the pace at which she worked, difficulty reaching her toenails, and needing help with nail care. Dr. Volansky referred her to physical therapy.

Plaintiff commenced physical therapy for chronic mid-back pain in May 2017. She reported twisting, lifting heavy weight, and pulling aggravated her back pain and that the pain varied between a one and a ten out of ten. Plaintiff exhibited full strength in her lower extremities, and on June 2, 2017, Plaintiff reported that her back pain had lessened with physical therapy. Twelve days later, Plaintiff stated her back pain had resolved.

On October 25, 2017, Mark Coleman, OTR/L, an occupational therapist, administered an FCE to estimate Plaintiff's work capacity and noted she could lift twenty pounds on a "rare" basis and fifteen pounds occasionally and could stand or walk for four hours out of eight. (AR 476) (capitalization omitted). Mr. Coleman concluded that Plaintiff had a conditional sedentary work capacity for an eight-hour workday. Dr.

Volansky adopted the FCE as an accurate assessment of Plaintiff's capacity to sustain work during a standard workweek.

At the hearing before the ALJ, Plaintiff testified that she was able to lift approximately twenty pounds and could stand or walk for approximately four hours during a workday. Plaintiff stated that her knees only bothered her when the weather was damp and that she volunteered at a thrift store four hours a day in 2016 but had to stop because her car stopped working. She stated that she did not wear her hearing aids because she "can't stand them[]" so she "trained [her]self [to] look[] at people when they [are] talking to [her], or if they talk a little louder, [she] can hear them." (AR 89.)

The VE testified that Plaintiff's past work as a custodian was unskilled and a medium exertional occupation as typically performed, although Plaintiff performed it at a "medium to heavy[]" level. (AR 92.) The ALJ asked the VE hypothetical questions based on a medium exertional capacity with limitations to moderate noise and the ability to maintain concentration, persistence, and pace for one-to-three-step tasks for two-hour intervals during an eight-hour day but not at a production rate pace. Although the connection with the VE was "breaking up[,]" the VE twice responded that a hypothetical person with those restrictions would not be able to perform Plaintiff's PRW "as performed by" Plaintiff. *Id.* The ALJ also asked the VE a hypothetical question based on an ability to lift fifteen pounds occasionally, ten pounds frequently, and an ability to stand or walk for four hours out of eight. In response to the facts in that hypothetical, the VE again opined that Plaintiff could not return to her past work.

The ALJ accorded great weight to the opinions of the non-examining medical experts including Dr. Swartz and concluded that Plaintiff was limited to a medium exertional work capacity and one-to-three-step tasks. The ALJ explained:

> The record evidence . . . documents that she had been looking for work. In addition, the record shows the claimant stated she could walk 1-2 miles, stand for up to 1 hour at a time and sit for 1-2 hours at a time, and lift/carry up to 10/20lbs. In November 2016, she reported to Dr. Rossman at consultative examination that she could stand for 4 hours at a time, walk 1-2 miles and sit 4-5 hours at a time. Those statements and activities imply a functional capacity inconsistent with her testimony and with the functional

14

> capacity evaluation done by an occupational therapist in November 2017, which found she could stand/walk just 4 hours. The objective medical evidence simply does not support such a restriction to light exertion work. In addition, the psychological limitations articulated in the residual functional capacity of this decision limit the claimant to simple work, but nothing more limiting.

(AR 18.) Citing Plaintiff's self-reports of her physical abilities, her statements regarding looking for work and volunteer activities, x-rays of her back that showed only mild degenerative joint disease and scoliosis, unremarkable images of her knees, and the lack of diagnosed impairment of her right shoulder, the ALJ concluded Plaintiff's RFC allowed her to perform her past position as a custodian.

In according little weight to the results of the FCE, the ALJ opined that "[t]here [was] no explanation of how or for what reason the reported limitations were assessed[]" (AR 19) and noted Mr. Coleman was not an acceptable medical source. Although the ALJ "has the discretion to determine the appropriate weight to accord" to a non-medical source opinion, *Diaz*, 59 F.3d at 314, the ALJ's reasons for according the FCE little weight are not supported by substantial evidence in the record. Contrary to the ALJ's assertion, the FCE stated that its purpose was "[t]o identify [Plaintiff's] current work capacity[]" (AR 476) and described in detail the physical capabilities being assessed, the testing protocols, criteria utilized to gauge whether Plaintiff's effort were "genuine[,]" and the tests that were performed. (AR 476-83.)

Although Plaintiff occasionally noted improvement in her back pain, substantial evidence in the record contradicts the ALJ's conclusion that her statements regarding the intensity, persistence, and limiting effects of her symptoms are unsupported. *See Estrella*, 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.") (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). Plaintiff testified at the hearing before the ALJ that she can lift up to twenty pounds, which is buttressed by Dr. Rossman's November 21, 2016

observation that Plaintiff had been experiencing back pain at a severity of seven out of ten which worsened when she was "'doing housework or lifting something[,]'" (AR 410) as well as the treatment notes of Dr. Volansky, who treated Plaintiff for back pain from May 2016 through June 2017 and noted that Plaintiff reported experiencing back pain for some time. Thereafter, Dr. Volansky opined that Plaintiff's history of manual labor caused degenerative joint and spine disease, which negatively impacted her ability to work. In addition, during physical therapy sessions in 2017, Plaintiff stated her back pain ranged from a one to a ten out of ten on a pain scale.

Despite his recognition that Dr. Volansky was Plaintiff's treating physician and had treated her one month after Dr. Swartz rendered his opinion and had reviewed the same x-rays, the ALJ failed to explicitly consider the *Burgess* factors in according her opinion little weight. This was reversible error. *See Krissy Mae Jean J. v. Comm'r of Soc. Sec.*, 2020 WL 3638233, at *9 (D. Vt. July 6, 2020) (granting motion to reverse decision of Commissioner where "the ALJ failed to provide good reasons for failing to accord controlling weight to [the treating physician's] opinion" and, as a result, "the treating physician rule was violated.").

To the extent the ALJ assigned lesser weight to Dr. Volansky's opinion because her treatment notes did not document "objective clinical findings that supported the opinion of the occupational therapist[]" and because Dr. Volansky had "noted normal motor strength and reflexes in her exam notes[,]" (AR 19), the record contains substantial evidence to the contrary. For example, April 2017 x-rays of Plaintiff's back showed degenerative changes of the facet joints and end plates in the lower lumbar region and mild right convex lumbar scoliosis and constitute "objective medical evidence[.]" *See* 20 C.F.R. § 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or both.").

Because the ALJ's decision neither treats Dr. Volansky's opinions as controlling nor provides "good reasons" to accord them less than controlling weight, the treating physician rule was violated. *See Deanna S. v. Comm'r of Soc. Sec.*, 2020 WL 813635, at *5 (W.D.N.Y. Feb. 19, 2020) (granting plaintiff's motion to remand where "the ALJ

16

developed an RFC for Plaintiff without any guidance from the treating physician most familiar with her conditions[]" and "provide[d no] 'good reasons' for concluding [the treating physician's opinions were] not" entitled to controlling weight).

In this case, the ALJ's violation of the treating physician rule was coupled with reliance on a non-examining physician's opinion that did not fully support the ALJ's disability determination. Dr. Swartz, a non-examining consultant, was the only medical professional to find that Plaintiff was capable of frequently lifting twenty-five pounds, however, he cited no medical evidence or objective testing in support of that conclusion. He further noted that Plaintiff had a spine disorder which was "[s]evere[.]" (AR 150.) The ALJ's determination that Plaintiff could work at a medium level of exertion based on Dr. Swartz's opinion is contradicted by substantial evidence in the record including the medical opinions of Dr. Volansky, Ms. Goodrich, and Mr. Coleman. Dr. Swartz specifically refrained from opining that Plaintiff could perform her PRW. Any error was not harmless as the VE opined that a hypothetical person with a medium exertional capacity and Plaintiff's other limitations could not perform Plaintiff's PRW as a custodian "as performed by" Plaintiff. (AR 92.) The VE further opined that Plaintiff could not return to her past work based on an ability to lift fifteen pounds occasionally, ten pounds frequently, and an ability to stand or walk for four hours out of eight.

Because the ALJ's determination that Plaintiff could perform her PRW was based on a violation of the treating physician rule and is not based on substantial evidence, a remand is warranted. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Cichocki*, 729 F.3d at 178 (holding ALJ's decision must be "[b]ased on a thorough examination of . . . [plaintiff's] relevant limitations and restrictions"). Plaintiff's motion for a remand is therefore GRANTED.

**C.      Whether Remand for the Calculation of Benefits is Warranted.**

Plaintiff seeks a remand for a calculation of benefits which is appropriate where "the records provided persuasive evidence of total disability that rendered any further proceedings pointless." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999); *see also Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (remanding for calculation of benefits where there was an "infinitesimal likelihood that employment of any kind would be available" to claimant).

In this case, although the ALJ's decision does not permit the court to fully evaluate his reasoning, the record also does not present overwhelming evidence that Plaintiff is totally disabled with an "infinitesimal likelihood" of employment. *See Selian*, 708 F.3d at 420 (declining to remand for an award of benefits where record included tentative diagnoses and conflicting opinions). While it is clear that the record does not support a conclusion that Plaintiff can perform her PRW, it is not equally clear that she can perform no other work. Although a close question, the court cannot find a remand for a calculation of benefits is required in the facts and circumstances of this case.

### CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion for an order reversing the Commissioner's decision (Doc. 6), DENIES the Commissioner's motion to affirm (Doc. 7), and REMANDS the case for further proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 30th day of October, 2020.

Christina Reiss, District Judge
United States District Court